We'll hear argument first this morning in Case 17-5554, Stokeling v. United States. Ms. Brin? Mr. Chief Justice, and may it please the Court, since the invalidation of the residual clause in 2015, the only way for a State robbery offense to qualify as an act of violent felony is if it has violent force as an element. Florida robbery does not have that element, because it requires only slight force to overcome slight victim or resistance. So your position is no robbery conviction in Florida counts under the armed career criminal offense, so robbery in Florida is out entirely? Because of the categorical approach, because the least culpable conduct for robbery in Florida does not require violent force. Sotomayor, does that apply, your answer apply to the armed robbery subsections of the Florida statute? In the Florida statute, yes, because armed robbery in Florida does not require using or brandishing or displaying or even representing that one has a weapon. It only requires carrying. But in most States that have armed robbery, aggravated robbery offenses that require using, displaying, threatening a weapon, those offenses would qualify, because that's a threatened use of violent force. Florida juries are instructed every day in Florida that although resistance is required, no particular degree of resistance is required. A victim can resist to any particular extent. And in fact, the case law in Florida confirms that resistance sufficient for a robbery conviction and a penalty up to 15 years in the State penitentiary can involve nothing more than the tightening of one's hand momentarily on a dollar bill before releasing it. I actually tried that holding, since I knew this was your most important case. And I held on to a dollar bill and asked each of my law clerks to try to pull it out of my hand. And I was surprised. I mean, people think, oh, it tears easily. Well, it tears easily if you go like this. But if you're really tugging on it, I mean, it's – I'm not saying nobody could do it, but it requires a lot of force, more than you might think. I don't think, Your Honor, that it requires a substantial degree of force, as this all of which connote actual violence, which are severe force, extreme, furious, vehement, strong, and powerful force. Clearly, there is some force involved. Roberts. It also said, and this, of course, is a language your friend on the other side stresses, capable of causing physical pain or injury. That covers a broader area than some of the other adjectives that were in the same paragraph. The phrase force capable of causing pain or injury has to be understood in context, and it is explaining violent force in the context of a violent felony definition. The Court emphasized the word violence by italicizing it, and then the Court gave all of these ordinary dictionary definitions of violence or violent, which are extreme force, vehement, furious force. So I think that's it. Alito do you think that shoving, grabbing, and pinching count as physical force under ACCA? Your Honor, the determination under ACCA cannot be made in a vactum. So there's no category of conduct, I guess we can say, besides stabbing someone in the back directly would involve that. Most conduct has to be viewed in context. For instance, the Court gave the example in ACCA of a slap to the face. In Castleman, they gave the example of a squeeze to the arm. So you have to look beyond the actual category. And one very powerful circuit. Alito under the categorical approach, you have to look at the category. So I really don't understand why you can't answer that question. Does pinching, for example, constitute physical force sufficient to activate ACCA? The categorical approach actually does not require you to look at a category. It requires you to look at the actual cases and determine what the least culpable conduct for conviction. And that conduct does not exist in a vactum. Sotomayor, we used the example of a tap on the shoulder not being sufficient force. So can you answer Justice Alito's hypothetical? Right. Is a pinch, an ordinary pinch, let's not talk about an extraordinary pulling of the ears that a parent might sometimes do, let's talk about just pinch. Is that sufficient force? If we set up a tap and the shoulder couldn't be, why could a pinch be? I think the answer is looking at the other side of the equation from what a substantial degree of force is.  And I think the only way to read that explanation of violent force is as force that it's a degree of force that's reasonably expected to cause pain or injury. I don't think a pinch. You've said the reasonable, and I do understand your point, which is from personal experience, if you tap an injured shoulder, it could cause injury. It's capable of causing physical pain and injury. But we've said in the normal course of circumstances, a tap on the shoulder would not, is not capable of producing injury. So. Sotomayor, I'm sorry, what? Nor would a pinch in normal circumstances. That's the point. So I know you use reasonably expected, but is it reasonably expected or just simply capable in the normal course? The reason that we have articulated reasonably expected is to contrast with an outlier case. And as Your Honor mentioned, a tap can cause pain or injury if you have an injured shoulder, if the victim has some unique susceptibility to pain. So that's why it is difficult to talk about categories and you have to look at the circumstances, but the circumstances are the normal ones as Your Honor. Kagan. Kagan. I wonder if you could say a bit more about this reasonable expectation standard, because I'm not sure it does all that much that's different from what the government standard does. I mean, if you take something like grabbing money out of a hand and say, could that reasonably be expected to cause pain or injury, well, maybe some injury, maybe a bruise, maybe a little scratch, maybe a little cut, and similarly, even a pinch. I mean, reasonably expected to cause pain, sure, for a while, for a moment. So how does your standard really help to distinguish the kinds of cases that you want to distinguish? Because I think the categorical approach requires you to look at real cases, and our real cases involve this minimal pulling or tugging action that resulted in no pain or injury, and that's a very powerful. That could be in the particular case, but don't you have to take the conduct in general? And particularly Justice Alito's question about pinching, there are some people who have thin skin and bruise very easily, and a pinch would probably be sufficient to cause bruising, actual injury. Right. So that would not be a circumstance known to the perpetrator. And the test that the Court set forth in Curtis Johnson by specifying over and over again this degree of force, and the Court used the word degree four separate times, is a test that is focused on the perpetrator, not on the victim. I mean, we all know from first year of law school that there are eggshell plaintiffs, and the purpose of ACCA is to predict future violence with a gun. For people who possess a gun, who would be the people that would be willing to pull a trigger and kill someone? So if there is an incidental injury, an accidental injury that no one could have been the cause of, meaning that someone does have thin skin, or someone has just had a shoulder surgery or has a tender area of their body. Kagan But my question wasn't that. It wasn't the eggshell plaintiff. It was the ordinary person who can reasonably be expected to suffer some, even if minimal, pain or injury, the pain that a pinch causes, or the injury that comes from your hand being bruised when somebody tries to grab some cash out of it. And I guess I was confused that you wanted to use this standard, reasonably be expected to cause pain or injury, because it does seem to me as though a lot of minor activity could satisfy that standard. So that's why we have said, number one, that whether there is an actual pain or injury in the actual reported cases, what has been prosecuted by the State? Has the State prosecuted for no injury or for exceedingly minor injuries? In Florida, they prosecute for no injury. So even though it is possible to hypothesize a case where the same conduct might cause injury, I mean, we think those are outlier cases, because the real cases that resulted in prosecution in our State have not resulted in injury. We're not saying it can never happen. Ginsburg-Miller How then would you describe an act of qualifying physical force? Could you give us your definition? Yes. It's a degree of force that is substantial enough to be reasonably expected to cause pain or injury in most cases rather than an outlier case. And in determining whether the offenses under our statute match that, a powerful circumstance is if the conduct has not resulted in any pain or injury. Alitoson In Taylor, the Court said that the revision of ACCA to include the elements clause expanded the predicate offenses beyond just robbery and burglary. But we are told that your reading of the statute would knock out robbery offenses in 30 to 40 case in 30 to 40 States. What is your response to that? Does that seem does it seem likely that that's what Congress was intending to do? Well, there are two parts of that question. Congress intended to cover robbery in the expansion, robbery and additional crimes. The way it sought to do that was by writing two different violent felony definitions. One was very narrow and circumscribed, that's the elements clause. The other one was quite expansive, capacious, and would sweep in every type of robbery, even snatchings, even robberies, pickpocketing, theft offenses that require no force whatsoever. So your answer, your answer is that they thought that robbery was going to be covered by the residual clause, is that right? They wrote language that would have covered it under the residual clause, and it did until three years ago. This issue did not really come before the Court. I'm stuck there, too, because if Congress uses the word robbery, we wouldn't normally think that it's excluding more than half the State's statutes that are defining robbery. That just seems like a strike against the statutory reading you're asking us to adopt. And I understand there's a residual clause, but Congress used the term robbery. And we've said it used it in the ordinary sense at the time of adoption. And at the time of adoption, it appears that, as Justice Alito suggested, over half the States would have included this kind of conduct. Well, again, two answers to that question. It used robbery in the 84 Act, and it deleted robbery in the 86 Act at the same time that it continued to enumerate burglary. To capture the robberies, Congress had two different definitions. And as to whether 43 States would be knocked out by our definition, as we have said in our reply briefing, demonstrated in our appendix, the government has only matched words in the statute, the word force and the word resistance. It has not done what the categorical approach requires, which is to take a deep dive into State law. How many States do you think will be knocked out? Because, I mean, Florida seems as though it's out of luck, because both it can't pick up under armed robbery, what it loses under unarmed robbery, for the reason that you said earlier. Presumably, there are other States in which armed robbery would count as under this clause. So how many States do you think are going to be in Florida's position that none of their robbery statutes count under this clause? I would say four or less. Four or less? Four or less. Why is that? It would have no form of robbery, because there are, first of all, just from my review and I'm not an authority on every State, but from my review, there are not many States that have the trifecta that Florida has. And let me say what that is. It is quite unique, and that is explicit embracing of any degree of resistance, number one. Number two, embracing the principle that any degree of force can overcome any degree of resistance. And third, actual prosecutions for slight force robberies. Some States embrace the immateriality principle. There are some States that have one or two applications, but there are very few States that I have seen in my research that are like Florida in having everything. And then on top of it, there are very few States that would be like Florida that also don't have an armed robbery provision that involves use, display, threat of a weapon. We've listed those in our case. Alitoson How many States would common law robbery, would simple robbery, not armed robbery or an aggravated form of robbery be knocked out by your understanding of the statute? So, again, it's hard to give an actual number, and we see from the mistakes that were made in the government's appendix that's really a fraught inquiry, but what I would suggest is that it's really only a handful, maybe six States or less that are like Florida in having everything, the principles and the applications. There are a few others that state the principles broadly, but there are no applications, and a few others that have slight force applications. Alitoson So you think that in applying the categorical approach here, it's necessary to look to the cases that are prosecuted? You have to look to beyond the statute? You have to look to prosecutorial policies and practices? That's what the Court said in Duenas-Alvarez, to determine if a statute can be or has been applied to nonviolent, non-generic conduct or in an overbroad way. The only way you can know that is to find actual cases.  Well, even if the statute on its face includes that kind of conduct? Alitoson The statute – well, first of all, the Florida statute on its face does not even include resistance. That's been judicially implied, and that's the fact in some States as well. But let's say there's a statute that uses the term resistance or overcoming resistance and force. Still, what the Court said in Curtis-Johnson is that this Court, Federal courts have to defer to the State's interpretation of their elements. In our appendix, we cited a Michigan case. The statute uses the term violence, and there is a case in Michigan that says spitting is sufficient violence for the statute. I mean, that's Curtis-Johnson, touching, contact behavior. At the other side of the spectrum, we have common law robbery States that say there are no minimal force applications. Our State supreme court has never said that the degree of force is immaterial. South Carolina, for example, and the Fourth Circuit said that in Doctor. And that's a common law robbery State, and they said it qualifies, because there are no broad principles embraced by this Court which would suggest slight force can qualify, nor are there any applications. So under the categorical approach, it will be a State-by-State inquiry, but all of the circuit court of appeals know how to do it. They've been doing it since Taylor, and they have to examine each State's law. I have exhaustively reviewed Florida law, and I have looked at other States' law, and I can tell you that not many States are like Florida in having everything. Roberts, let's say we disagree with your understanding of Duenas, and we think that if it's clear on the face of a statute that conduct is encompassed under the elements approach in Taylor, then that's how we would define it. Does that alter the number of States that you think would be knocked out under your approach? Well, I've already knocked out, I believe, at least 10 States on my approach by reporting in our appendix the full language of the statute that the government excerpted out of its own appendix. So statutes which make clear on the face of the statute that violence can be contact, mere touching, any impact. So, yes, that reduces the number. But other than that, once we are down to force, violence, and resistance, those are common words that come from the common law, but each State has gone in its own direction. And in order to properly do the categorical approach under the elements clause, you have to defer to the interpretation of those elements. It's a different type of inquiry than for the generic offense determination. Some generic offense determinations can be made on the face of the statute because the statutory language is plain. But as we have shown by case law, showing that resistance can be nothing more than the momentary tightening of one's hand, that the word resistance does not have a meaning in and of itself. But, Counsel, in Curtis-Johnson, you rely heavily on the general statements of the Court, but the application of those general statements was to something very specific, battery and a mere tap on the shoulder. And all Curtis-Johnson seemed to hold was that that was excluded. So why don't we follow what Curtis-Johnson seemed to do in applying those general statements to the specific statute at issue here, and why wouldn't that then encompass the Florida statute, which requires more than, say, a tap on the shoulder? Because what the Court did before applying the standard to the Florida battery statute was to definitively construe the words that Congress used in the elements clause. Go ahead. But as you point out, it's a bit general, those statements, that language. And so how do we understand what the Court meant by that? You look at how it applied it, and it was to a battery statute, and it was a case where the government argued that the mere tap on the shoulder was okay, and the Court said, no, that's not enough. But all it seemed to carve out was that kind of statute, at least as I read page 139 of the Curtis-Johnson opinion, seemed to very carefully distinguish those two situations. Your Honor, I disagree with that, because I believe that the standard the Court set forth was a violent felony definition. The Court said that the word violent alone connotes a substantial degree of force, and used words like severe, extreme, vehement, furious to characterize and flesh out the concept of what a substantial degree of force is. And the conduct in our case, yes, it's more than a mere touching, but it's not extreme, furious, severe, vehement, any of the adjectives, the ordinary dictionary terms, which was the definition of violent force the Court embraced in rejecting the common law view. So the Court did not draw a line. It would have been a very short opinion if touching is out and everything else is in. And we see from Castleman 4 years later that other minor uses of force do not convey the sense of violent in the colloquial sense, and the Court reinforced that in Castleman. So I think there's a lot more in the definition of Curtis-Johnson. The standard was a substantial degree. The Court gave adjectives that meet it. And the conduct in several of the Florida cases does not amount to that level, and that's why Florida robbery does not qualify. Alito, the statutory term is physical force. Right. And in the ordinary understanding of that, force sufficient to overcome resistance would be physical force. The holding in Curtis-Johnson was what Justice Kavanaugh described. Battery, the touching that is necessary for a battery is not physical force. Any unwanted touching satisfies common law battery. Now, if we go beyond that, you have to be necessary to quantify the degree of physical force that's required, like how many pounds per square inch. I have no idea how you do that. The standard that the Court set in Curtis-Johnson, I believe, is a substantial degree in force. So what is a substantial degree of force? So the as the Chief Justice stated most recently in DiMaia, that substantial standards are found all through the law. Substantial is a familiar term. How many votes did that get in DiMaia? Not five. The majority in DiMaia actually said that substantial is not a difficult term to apply at all when it's being applied to real-world conduct. And that's what the categorical approach requires. We have real cases. Apply the term substantial to real-world cases. And one important factor in our real-world cases, our prosecutions, is whether there was pain or injury. In the actual case, we have cases that don't have pain or injury. Alito, do you think there could not be substantial force unless it actually causes pain or injury? No, I'm not saying that either, and I think we said that in our brief. It's that's a significant circumstance, like circumstantial evidence. There could be someone who is uniquely immune to pain. I mean, if you're pinching Arnold Schwarzenegger or slapping him or something else. Alito, do you think this depends on a case-by-case determination? No. I think it depends on judges using their common sense and common experience that they use every day under the guidelines to make determinations of degree, determining what's minor, what's major. This is what judging is, this is what juries do. But you have to hypothesize a particular type of robber and a particular type of victim. So, you know, what is the quintessential robber and what is the quintessential victim? As you, you know, as you just mentioned, if you have a very strong victim and a very weak robber, an awful lot of force could be applied without a reasonable possibility of causing pain. On the other hand, in what might be the more typical situation, if you have a young, strong robber who pulls a purse out of the hands of an elderly woman or a briefcase out of the hands of an elderly man, there's a real chance that that's going to cause pain and maybe serious physical injury. So I have no idea how to imagine the typical robber and the typical victim. Who are these people? Can you describe them for me? I don't think that our test or the standard requires imagining a typical victim. It requires, under the categorical approach, to look at the actual cases. Our cases did involve, to use your language, typical victims. Alito, under the cases, under the Florida cases, you've studied them all. What is the typical victim and what is the typical robber? Someone that doesn't have any of those unique characteristics that you just described. They were not particularly weak, frail, and anything that would have been obvious. And let me just stress this. The encounters in the Florida cases took place in a split second. They were momentary, one-handed, tearing something out of another person's hand with one hand. Maybe if you use two hands and grab someone by the arm and pull at the same time, that's a different degree of force. But doing it one-handed in a momentary encounter like this, I think in everyone's common experience, judges and That's not like slapping someone in the face. That's not like stabbing someone in the back, or those type of facts. I don't think that's difficult. It may be a more difficult determination where the least culpable conduct in a State involves substantial injury because there was some sort of vulnerability of the victim. But that's not Florida. So that would be a different case. But what we know from Florida is that any degree of resistance and any degree of force, I see that I have my light. I'd like to reserve my remaining time for rebuttal. Thank you. Roberts. Roberts. Thank you, counsel. Mr. Liu. Mr. Chief Justice, and may it please the Court. For centuries, the common law has provided a basis to distinguish violent takings of property from nonviolent takings. Violent takings or robberies were takings that involved the use of force sufficient to overcome the victim's resistance. That's the element of force that's found in the basic robbery statutes of over 40 states, including Florida. It's the element of force that Congress used in its own definition of robbery in the original 1984 ACCA. And when Congress amended the ACCA two years later, it took that element and Under Petitioner's interpretation of the ACCA, however, common law robbery would not qualify as an ACCA predicate. In fact, Petitioner cannot identify a single state whose basic robbery statute, whether based on the common law or not, would qualify under his interpretation. Mr. Liu, could I just ask what you understand the Florida case is to be saying? So I'll give you a hypo to elucidate that. So I'm walking down the street and I'm carrying a handbag with a strap over my shoulder. And as everybody knows, the way you carry that is you essentially grab onto the strap. So and then somebody comes and runs and rusts it out of my grasp. Does that count under Florida law as robbery? It depends. I think it would depend on a few more facts. But I think the Florida cases do focus just on this issue. And if I could illustrate my answer with a couple of the Florida cases. No, I want to – well, you can illustrate it. Well, I think the facts you described are not too different from the facts of Rigel. And I think that is a case where the Florida courts did conclude that the force used was sufficient. There the victim had a bag on his shoulder, on her shoulder. The victim, the defendant came around, yanked the bag off. There was a bit of a struggle because the victim turned and tried to resist in that fashion. And the person, and the strap of the purse. But I was actually taking that out because, you know, I'm holding on to the bag. So you're going to need some force to get it. But – and that kind of force is used. Robbery? Yes. Okay. Well, then robbery in Florida really includes pretty much the full gamut of bag snatching. I don't think so. And I'll give you a case that illustrates that. A case called RP, which is cited in the Robinson case, that's sort of the seminal case, involves someone who grabbed a camera that was hanging off someone's shoulder. And that did not rise to the level of force necessary for robbery. And the difference between the two cases is the added element of violence. It is the resistance by the victim. Right. All I was saying, I mean, I'm sure you can find me a couple of cases where people walk around with cameras or bags and don't have their hands on them. But I'm going to say, as every woman who carries around handbags knows, that's just the normal way you carry around a handbag. So that would be the usual case. Maybe not the always case, but it's the usual case of bag snatching that you say falls under the robbery definition. And I think what's important to remember about even that case is that there is force on the one hand being applied by the victim, which is being met by force on the other being applied by the defendant. And what that amounts to is a physical struggle over a piece of property. I think it's- But the problem is- Yeah, I mean, it's- I'm sorry. I'm sorry. The problem is, just in common parlance, the definition that the courts have given in Florida is the slightest resistance qualifies as violent force. So that if the victim just merely moves you away and you push him back- I don't think that's- I don't think that's the slightest force. Well, but I think what's important to keep in mind, and I guess this finishes my answer to Justice Kagan, is that what is inherent in the offense every time it occurs in Florida is this violent contest over a piece of property. And I think it's natural to conceive of the force necessary to prevail in such a contest as force capable of causing- But that's not the words the Court has used. It said the slightest resistance and the slightest force used to overcome it qualify as a robbery. And under the categorical approach, I thought that we had to eliminate something that was slight. Well, I think it's true that what the resistance can be of any degree, but I think you have to view that resistance- The force can be of any degree. Well, but I think what's key is the context in which that interaction is occurring. When you have force on the one hand being met by force on the other, what you have is a fight over the property. And I think that is a quintessentially- No, because what you have is slight force over slight resistance and slight force to overcome it. How do you get past that into that it's a tug of war? I mean, some people grab you by your arm and you just pull it away. And it doesn't necessarily have to be a very forceful pulling away. Well, this sort of interaction where force is met by force has been understood by the common law since Blackstone as being violent. But we have to deal with the Florida statute and how that the Florida court, the Supreme Court has used, but what violent force is, what its own statute requires. And the Florida Supreme Court has used words like, a robbery can be committed with any degree of force, so any degree of force certainly can't be substantial degree. Well, Justice Ginsburg, I think that quote comes from a case called McLeod, from 1976, I mean from 1972. The Florida Supreme Court in Robinson in 1997 said that that was merely dicta. It in fact pointed to one Florida intermediate court case that had read that literally to mean any and expressly disapproved that holding. Well, counsel, I'm not sure that quite solves the problem, though, because the statute on its face says not just force or violence or assault, but it says or putting in fear. That is sufficient to constitute robbery in Florida. And Robinson, I'm not sure, helps you very much, because I think it's susceptible to a reading of saying in the cases of purse snatching where force is alleged as the mode for creating a robbery, then you need whatever you've been talking about with Justice Kagan and Justice Sotomayor. But I don't read Robinson as suggesting force is the only way of establishing robbery under Florida or doing anything to eliminate the disjunctive language of or putting in fear. What do I do about that? In Florida, there are two ways to commit robbery. One is robbery by force. The other is robbery by intimidation. And that picks up the putting in fear language you just pointed to in the statute.  Robbery by intimidation or putting in fear satisfies the Elements Clause of America. I don't care what Petitioner's challenged. I'm asking you, why isn't that a problem under Taylor for the government in this case? Because the Florida courts have construed putting in fear to mean a fear of bodily injury. And under the law, fear of force is not the same thing as force, right? That's correct. So we look at the text. So why don't you lose? So we look at the text of the Armed Career Criminal Act, and it says, any felony offense that has as an element the use or threatened use of force. And that's why there hasn't been any debate about why the putting in fear prong satisfies the Elements Clause. So you think the putting in fear prong is always and can only be accomplished by threats of force? By threats of force, exactly. By threats of putting in fear. Do we know that's right? Is there any evidence that that's right? Well, that is how the statute has been construed, as applying to threats to cause bodily harm. By what authority? Robinson isn't – Robinson doesn't do that. It's a case we cite in the beginning of our argument section called Baldwin v. State that gave that interpretation. Bodily harm is the quintessential injury that satisfies the Curtis Johnson standard. And so a threat of such harm is going to be threatened use of force under the ACCA. And that's why no one has disputed that in this entire case. I guess I'd like to return to the – I guess I'd like to turn to Petitioner's test and – and – Kagan. Mr. Liu, could I ask before you do that, you keep referring to the common law, but I had thought that the whole structure of the Curtis Johnson opinion is to say, well, we have this common law definition, but it's in the context of a statute which is trying to identify violent felonies. And in that particular context, Justice Scalia said, we're going to ignore the common law definition and instead use an ordinary language definition of what force is. And he basically says physical force in the context of a statute that is trying to define violent felonies is violent force, substantial force, and so forth. So why is this common law argument relevant at all? Well, I think it's relevant for a number of reasons. First of all, Curtis Johnson did reject a common law definition, but the common law definition it rejected was one drawn from a misdemeanor offense. Curtis Johnson didn't call into question that a felony definition of force might fit, and this one does fit perfectly. You're right that Johnson also referenced the ordinary meaning of force. I mean, he didn't reference it. The whole argument, the whole decision was based on that. And that's why I think I'd return to what I was saying earlier. I think if you took someone off in everyday English and explained to them what happens in these cases where someone resists, that resistance is physically overpowered by someone else, I think violence is actually the word a lot of people would use. It also is the word the common law has used for centuries. It's the word violence that's found in the statutes of dozens of states, and it's the word that Congress used when it enacted the basic robbery definition in the 84 Act. It regarded this type of robbery, Congress, regarded this type of robbery, common law robbery, as one of the most common violent street crimes that existed. And so I think this ordinary approach, this ordinary language approach, how we would use violence in ordinary English actually cuts against my point. I guess the ordinary English view is something like, look, when I'm walking down the street and somebody puts a gun in the air and says, give me your money, that I understand to be a violent offense. But when I'm walking down the street and somebody grabs my handbag, I'm not happy about that, but it's, it just doesn't have that violent aspect of it in ordinary language that I think, you know, beating somebody up does, putting a gun in their face does, and this is a State that defines robbery so broadly that you tell me it basically includes every bag snatcher. Well, I guess what I would say to that is whether, you know, what I would say is the Congress thought, and I think all the indications are that Congress regarded this as violent. Kagan. Well, what is the this that Congress thought? I mean, in all of these cases, we have to look to whether the State has defined its crime more broadly than the basic offense. The idea that Florida here is somehow an outlier among common law jurisdictions is just not correct. The Florida case law tracks exactly the sort of case law we found in the common law treatises dating back to Blackstone, and that was the notion of violence that Congress had in mind when it wrote the definition of robbery in the 84 Act. Two years later, Congress's intent was to expand the scope of the ACCA. That was the very title in the text of the ACCA. But that was through the residual clause. No, Your Honor. Congress at the same time made clear that it thought robbery, as defined in the 84 Act, would satisfy the elements clause. It wasn't depending on the residual clause to do the work of the elements clause. We know that from both the text and the history of the 84 Act and the 86 Act, because starting with the text, Congress took the very key element in its robbery definition, force, and made that the centerpiece of the elements clause. But Curtis Johnson says substantial degree of force, as Justice Kagan points out, and how are we supposed to deal with that language in the Curtis Johnson opinion if we're trying to follow Curtis Johnson strictly? Well, Justice Kavanaugh, the force used, the type of force involved in a Florida robbery or any common law robbery is substantial in two ways Curtis Johnson itself found relevant. The first is this kind of force is force capable of causing physical pain or injury. That's what Curtis Johnson meant by substantial. The two sentences, one follows right after the other. The second is the force capable of causing physical pain or injury. I mean, a touch is capable of causing physical pain or injury when done in the wrong context. I'm standing at the top of a stairs, somebody startles me by putting his hand on my shoulder, I fall down the stairs, I break my leg, that's capable of causing physical pain and injury, just caused physical pain and injury. So why doesn't your test, why isn't it defeated even by the holding of Curtis Johnson, the particular application of Curtis Johnson? Well, it appears there's common ground here. We absolutely agree that whether something is violent has to be evaluated in the context. And a tap on the shoulder, I think, if you pulled someone off the street and said is a tap on the shoulder without more violent, that person would say no. But as I was saying, if you describe to them the situations that are inherent in a Florida robbery offense, a physical contest where two people are fighting over a piece of property, that is quintessentially violent. And has been so for centuries. Sotomayor But I'm sorry, you keep using the word fight. But the statute just says least resistance meant by the least force. That's not a fight in my dictionary. The fact that somebody has something and pulls back and you just walk away with it, that's not substantial force. Oh, it is, because whatever the resistance, the form, the resistance that the victim is providing is being physically overpowered by the defendant. And But how does that define, is it a substantial force, even as capable of producing injury, if the example that the chief used, an elderly victim, just simply can be overcome with virtually no force whatsoever. And that's not capable of causing injury, even in an elderly person. Again, the force shouldn't be measured in some quantitative respect, like foot-pounds or force-meters. Force does have to be evaluated in the context. And so, yes, in some cases, the degree of resistance may be small. Sotomayor All right. How about a pickpocket that walks away and someone grabs them lightly and they just pull their arm and keep walking? As I read the Florida statute, that would cover that as well. Not force directed by the victim or resistance by the victim, but resistance by someone else in the course of the taking. Right. And I think that the facts you gave me were, it seemed like the defendant, I guess, grabbed on to the, or the victim grabbed on to the defendant. Sotomayor No, victim goes over, pickpockets, I'm sorry, the thief walks over, pickpockets the victim, turns around, starts to walk away, and a passerby grabs hold of his arm and he pulls it away and keeps walking. No. For one thing, the resistance has to come from the victim. Sotomayor It's not the way I read the statute. It says, when in the course of the taking, there is a use of force, violence, assault, or putting in fear. In the course of? Right. The timing, the force can come before or after the taking. Sotomayor But it has to be directed at the victim. If there's a Florida case to the contrary, then do you lose? No, because what the ACCA cares about is the use of force without regard to who it's directed against. Roberts What ACCA cares about, and Curtis Johnson said we have to determine meaning in context, they wanted to keep off the street people who were likely to use a gun. And at a broad, the broadest level is somebody who engages in a purse snatching with some degree of resistance, is that person, do you look at that and say, well, that person is likely to use a gun? Sotomayor Well, Congress thought so. We know that because Congress adopted this very definition of robbery in the 84 Act. Robbery, common law robbery, was an original ACCA predicate. And in doing so, Congress described these types of robberies as the most common violent street crime. Kagan Why does burglary end up as an enumerated crime and robbery does not when Congress changed the Act? Because it wasn't necessary to enumerate robbery, given that Congress was taking an element of robbery and making it the basis of the Elements Clause. By contrast, there was a lot more doubt about whether the ACCA, the new ACCA, without a specific reference to burglary, would have covered burglary. This Court recognized that on pages 584 to 589 of Taylor, there was a concern that burglary would be inadvertently left out. But there could be no such concern with robbery, because Congress did the most straightforward thing it could do to ensure that the new Act covered robbery, and not just robbery, but also things like rape and murder. What it did was it took that element, thus guaranteeing that all the 84 covered robberies would come along with it, and made that the basis such that other crimes too, rape, murder, et cetera, would come in as well. So there just simply was no need for Congress to re-enumerate robbery. And the indications we have from the text and the history are that Congress thought the old ACCA was working perfectly well. Senator Specter got up and said, look, we want to include everything that was included in the old one, and we want to expand it. And this Court in Taylor noted the same thing. It said the consensus at the time was the only issue before us is how to expand it. And so the only issue before us is how to expand it. Alito, Ms. Brind says that her understanding of what Curtis Johnson requires would have a minimal effect on the robbery statutes of the States. Is she counting the States correctly? No. And if you look at our Petition Appendix, we've separated the States, the States' basic robbery statutes into three basic categories. The biggest category, over 40 States have adopted the common law standard, the same standard as Florida. There's no indication that Florida is an outlier. All of those States would be knocked out. That leaves three or four States that have a notion of force that is broader than the common law, that is, that would cover things like sudden snatchings, purse snatchings. When you say knocked out, do you mean everything is knocked out or only the basic robbery offense is knocked out, but that leaves aggravated robbery offenses? I say only the basic robbery is knocked out, but I think that's the right focus, because we know from the 84 Act, Congress was concerned about keeping in basic robbery. You look at the definition in the 84 Act, it's not armed robbery, it's not aggravated robbery, it's simple common law robbery. Let's put that aside for the moment so we can disagree with you. How many States have a robbery statute that would be left under ACCA, under your opposing counsel's interpretation? Basic robbery statutes? No, basic or aggravated. Basic or aggravated, it's we don't have the exact number. Part of that is because Petitioner is unwilling to commit to whether some of those aggravated States actually qualify. The aggravated factor that Petitioner points to is an element in the offense that requires a showing of actual injury, a causation of injury as an element. But Petitioner on page 8 of his reply brief isn't even willing to say whether those offenses qualify. But if they did qualify, then how many States are affected? I don't have an exact number. I think it would be maybe two dozen States that would qualify. But I just want to reiterate, I think that is the wrong lens to look at this issue, because Congress, when it wrote a basic robbery definition to 84 and then wanted to expand the ACCA, didn't think the expanded ACCA was then going to cut back and limit the coverage of the ACCA to only a small subset of robberies that qualified as armed aggravated. The problem I have with that, counsel, and hopefully you can help me with this, is you keep coming back to the belief that Congress wished to or intended to keep in common law robbery in its simple form. But Curtis Johnson expressly rejects the common law definition of force. So what do we do about that? No. It rejected the common law definition of force that came from a misdemeanor offense. What was key in Curtis Johnson was that the key term being defined was violent felony. And so Justice Scalia said it would have been a comical misfit, a mismatch. Well, as the dissent pointed out and the majority acknowledged, the misdemeanor felony line at common law simply meant one, you're put to death, and the other, you're put in prison. So it wasn't quite the same line that we have today. And that was the common law definition of robbery. Robbery was a misdemeanor. No. Robbery was a felony at common law. Often it was. But the force required was very minimal at common law. And the majority expressly rejects that in Curtis Johnson as sufficient to satisfy the statute. Now, maybe that's wrong. Maybe you want to revisit Curtis Johnson. I've heard a lot of arguments today that seem along those lines. But what do we do if we don't? Well, I — it's not true that Curtis Johnson rejected this — this definition of force. The definition of force that Curtis Johnson rejected was one that could be satisfied by the merest touching. And common— Which it acknowledged was the common law definition. Was the common law definition that came from the misdemeanor offense of battery. Common law robbery, which has a felony definition of force, force overcoming resistance, cannot be satisfied by the merest touching. We know that because not only did the treatises say so, but Florida in particular has said so in the Walker case, which involved a — a mere touching where someone took — took away someone's property. And that did not rise to the level of common law robbery. And so — What do you — what do you do with the express statement in Curtis Johnson that the word violent in 924E2B connotes a substantial degree of force? We — we have three responses. Once — one, the substantialness of the force has to be understood in context. And in the context of a physical struggle, I think people would call that force substantial or violent. Sotomayor This really has — sounds like we're overruling Johnson and reintroducing into the categorical approach this whole notion of what's the normal situation. I — I — I guess if I'm looking at something in a categorical way, I'm saying little force is not substantial force, period. Sotomayor That's the end of the story. If that's what the categorical approach means, which is what it appears our cases say — Jaffer And — and Curtis Johnson didn't adopt a quantitative measure of force. Yes, I — I will acknowledge that if you measured the force in some of these cases on a quantitative basis, we're not going to get to a lot of newtons or foot-pounds or foot-meters. Sotomayor And you're not going to even get to pain yourself? Jaffer But Curtis Johnson made clear that that wasn't the right inquiry. It's a qualitative assessment. It — the words capable of causing injury were a gloss on the word violent. And I go back to what I said earlier. This sort of interaction, a physical struggle between two people over a piece of property has been regarded as violent in the common law by Congress, by over 40 States, for hundreds — for a very long time. Alito Isn't the standard force sufficient to overcome resistance a quantification? That's a way of quantifying how much force is necessary. So the force that is required for a battery, the merest touching, is — is not enough. But there has to be a substantial amount, a quantifiable amount, and the quantification is the amount of force necessary to overcome resistance. If you don't adopt that, then I do think you have to get to foot-pounds or something like that. Well, no, that's the sort of — I think I'm agreeing with you more than disagreeing, Justice Alito. I don't think we should measure force in terms of some statistic or — or, you know, exact degree. I think — I think the force used has to be understood in context. And I think the sort of force that is necessary to overcome someone's resistance is going to be more than a mere touching and is the sort — is the type of violence that has been regarded as violent by the common law and even more relevant Congress. I guess, Mr. Liu, the problem I'm having in a nutshell is you keep on referring to this as a physical struggle over property, but at the same time you tell me that if somebody snatches a bag off my shoulder, it's — it counts as robbery under Florida law. And to me, that is not a physical struggle over property. And if a State defines its robbery statute that broadly, so as to include, you know, thefts of property, but that are not done with physical contestation, physical struggle, then the State has made a choice. And, Justice Kagan, I think we just disagree about what's covered by State law then, because I don't think a simple purse snatching or pickpocketing, those things were the very reason — was the very reason for Robinson. Robinson, the Florida Supreme Court case, the very reason for it was to clarify that those sorts of things are punished as theft, as larceny, as sudden snatching. Kagan. But I go back to what your answers to my first questions were. I'm carrying my bag with my hand over the strap, and you say when somebody wrests the bag from me, that's — that's robbery. And I say that's every bag snatching in America, save a few. Well, but I think only in a case where there is actual victim resistance, physical resistance to the taking. In a case where that's absent, like the AJ case discussed in Robinson itself, that's not going to rise to the level of a robbery. That's going to be prosecuted, if at all, only as a theft or a larceny. And so I think what the question before this Court boils down to is whether it should recognize a line between violent and nonviolent takings. But, Counsel, can I say one thing on Curtis Johnson there? Which is, it says violent force. And if I — if it stopped there, I think you might have an issue. But then it says that is force capable of causing physical pain or injury to another person. And capable of seems to me much different from what we usually, as Justice Kagan would say, think of as violent force. So maybe — maybe there's something in Curtis Johnson itself. We've talked a lot about it. But in that one sentence, it says violent force. And that says something else that seems in tension with violent force. Mr. Chief Justice — Certainly. — your answer. I think the capable language is a gloss on violent. I think it is an ordinary English way of translating — of spelling out what violent means. And I think whether you look at violent or the capable language, common law robbery satisfies that definition. Thank you, Counsel. Ms. Brin, you have four minutes remaining. Thank you. Your Honor, at common law, no physical resistance was even required for robbery. The classic example from Blackstone is pulling a watch chain and snapping a watch off of someone. The person doesn't have to do anything. So under the government's view here, that would constitute violent force, where there wasn't even any — it's a fiction. Resistance was implied in the watch chain at common law. Common law resistance was so broad, and that was the intent in 84. But let me just say Florida robbery would not even meet the 1984 definition, because Florida's expanded the temporal scope of robbery far beyond the common law, so that they're — so Florida robbery today is essentially shoplifting and pickpocketing plus resisting apprehension in some way. Now, to include these slight force robberies as a predicate for an enhancement that would start at 15 years imprisonment and authorize a penalty up to life is really inconsistent with Congress's purpose of identifying the worst of the worst offenders, exactly those offenders who would be likely not only to possess a gun but kill someone with a gun. And there is no predictive value from using slight force to snap a bag or pull a dollar bill or even just pull one's arm away from a security guard that would be predictive of the willingness to use violent force. If Congress finds that the result in this case is counterintuitive, not what it intended, and it really wants slight force robberies to qualify as violent felonies sufficient to support that enhancement, it's in Congress's hands. They can easily rewrite this statute. There were two definitions originally. All robberies came within the residual clause for many, many years. This has only become a question after the elimination of the residual clause, and Congress has multiple resources. Alito, the residual clause referred to, quote, capable of causing, I'm sorry, a serious risk of physical injury. So how would common law robbery come within that? It just by the possibility of a confrontation afterwards, which was the way, which was the standard this Court used for the residual clause crimes, which swept in pickpocketing and all these offenses that Congress. I'm sorry. You think that common law robbery involves a serious risk of physical injury? No. Then how would it fall within the residual clause, which is what you just said? I'm not saying that, Your Honor. I'm saying that as applied, as the residual clause was applied, because the language was so capacious and the standard was unclear and it focused on a hypothetical possible confrontation, one could hypothesize a confrontation after pickpocketing, after shoplifting, and ultimately the residual clause swept in everything. And that's why I believe it was invalidated by this Court. But now this Court cannot compensate for the loss of the residual clause by reading the elements clause beyond its terms. And one very important term is has as an element. Congress dictated the categorical approach. If it doesn't like the results of the categorical approach, it can easily rewrite ACCA. Thank you. I ask Your Honor to affirm to reverse the decision below. Thank you. Thank you, counsel. The case is submitted.